as it enjoins the said defendants from transacting business and using the name of either the Reverend Stephen Merritt·or his grandson, Stephen·Merritt, was entirely unjustified by the evidence.

Therefore I think the judgment appealed from should be modified by striking out all the provisions therein, excepting the single provision enjoining the defendant corporation from using the name Stephen Merritt Burial Company in the undertaking business.

LAUGHLIN, J., concurs.

---

### PEOPLE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 5, 1913.)

1. RAILROADS (§ 482*)—FIRES—ACTIONS—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

Evidence in an action against a railroad company for damage to timber in the state forest preserves, claimed to have been caused by fire from defendant's locomotives, held to sustain a finding that the fire was caused by defendant's negligence in operating defective engines.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1730–1734, 1736; Dec. Dig. §'482.*]

2. RAILROADS (§ 481*)—FIRES—ACTIONS—ADMISSION OF EVIDENCE.

In an action against a railroad company for damage to timber from fire alleged to have been started on October 14th, evidence as to what trains passed over the road from October 1st up to the 14th, and of the defective condition of certain of its locomotives prior to the 14th, was admissible on the question of negligence, as tending to show the customary way of operating the engines shortly before the fire.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1717–1729; Dec. Dig. § 481.*]

3. DAMAGES (§ 62*)—MITIGATION.

In view of Const. art. 7, § 7, forbidding the timber of the state forest preserve to be "sold, removed or destroyed," where timber on the preserve was burned by the railroad company's negligence, the state was not required to market the timber injured, so as to mitigate the damages; not having the constitutional power to do so.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–131; Dec. Dig. § 62.*]

Robson and Foote, JJ., dissenting in part.

Appeal from Trial Term, Herkimer County.

Action by the People of the State of New York against the New York Central & Hudson River Railroad Company. From a judgment for the People, and an order denying a motion for a new trial, and also a motion for a nonsuit, defendant appeals. Affirmed

See, also, 146 App. Div. 904, 133 N. Y. Supp. 1138.

The action was commenced on the 18th day of July, 1910, by order of the forest, fish, and game commissioner, to recover damages sustained by the plaintiff because of the alleged negligence of the defendant in setting fire to a portion of the forest preserve owned by the state and which abuts upon the right of way of the Malone branch of the defendant's railroad, which extends from the city of Utica to Malone. The defendant appeals from the judgment, upon the grounds, as urged, that the evidence fails to establish

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

actionable negligence against it and that the verdict of the jury upon that issue is contrary to and against the weight of the evidence, because of alleged errors committed by the learned trial court in the admission of evidence and in charging the jury, and because, as it is claimed, the verdict is excessive.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Martin E. McClary, of Malone, for appellant.

Thomas Carmody, Atty. Gen., and Benjamin McClung, of Albany (John T. Norton, of Troy, of counsel), for the People.

McLENNAN, P. J.   It is conceded that the title to the lands which are the subject of this litigation, and which were damaged by the fire in question, is in the state of New York, and that such lands are a part of the forest preserve of the state; that the Malone branch of defendant's railroad extends for a considerable distance through the lands comprising such forest preserve, and which abut upon the right of way of said railroad; and that at all of the times herein mentioned the defendant has operated upon and over such right of way a steam railroad.   The summer and early fall of the year 1908 was an exceptionally dry period, and a great many forest fires were started and raged along and adjacent to defendant's right of way, spreading over a considerable area of the forest preserve at different points.

In the complaint it was alleged, in substance, that all of such fires between Woods Lake and Beaver River were started and occasioned through the negligent operation of defendant's railroad over and upon its right of way, and damages resulting from all of such fires, amounting to $30,000, were demanded.   By reason of the provisions of certain orders requiring the plaintiff to furnish bills of particulars (the validity of which are not questioned upon this appeal), when it came to the trial of the action the plaintiff was limited in its proof to establishing the fact that on the 14th day of October, 1908, a fire was started on the defendant's right of way through its negligence at a point between milepost 75 and milepost 75.25, about 1⅚ miles northerly of Woods Lake station, and about 2½ miles southerly of Beaver River station; and the plaintiff was also limited to showing that through the negligence of the defendant said fire was permitted to spread over and upon a large area of the adjoining lands of the forest preserve, and the proof as to the damages was limited to such as resulted from the starting and spreading of such fire.

That on the 14th day of October, 1908, the day in question, a fire was started on defendant's right of way between the points specified, and that it spread over a considerable area of the forest preserve abutting upon or adjacent to such right of way, is not seriously disputed by the defendant; but the defendant strenuously contends that the evidence does not support the finding that such fire was started and allowed to spread because of its negligence.   There was no eyewitness to the starting of the fire, and, therefore, the evidence of defendant's negligence was necessarily circumstantial.

[1] Upon the circumstances attending the starting and spreading of the fire depends the question of whether or not the same resulted

through the negligence of the defendant. It was shown by the "train sheets" of the defendant, introduced in evidence by the plaintiff, that on the 14th day of October, 1908, several trains of the defendant, drawn by its locomotives, of given numbers, passed the point at which the fire in question was started. It also appears that on the 7th and 10th days of October, 1908, the supervisor of equipment of the Public Service Commission, Second District, pursuant to instructions given because of the complaint as to the numerous fires along the defendant's right of way, examined the fire boxes and ash pans of several of the defendant's locomotives at Utica, Malone, and Tupper Lake Junction, and it was found that such fire boxes and ash pans were seriously defective and did not comply with the provisions of the statute in such case made and provided. It is shown by the testimony that on the 14th day of October, 1908, the day on which the fire in question was started, certain of the locomotives of the defendant, the fire boxes and ash pans of which had been found to be defective, passed the point where the fire started, and it was shown that the defects in such fire boxes and ash pans were such as to permit the free escape of live coals in considerable quantities and of considerable size upon the defendant's right of way. The details of the defects in such fire boxes and ash pans are fully set forth in the evidence, and it leaves no doubt that they were defective and in such condition as to permit live coals and cinders to fall about the tracks of the defendant.

No repairs were attempted to be made of such fire boxes and ash pans from the time of the inspection by the Public Service Commission, when the defendant was informed of their defective condition, until after the fire in question. Of course, it was impossible for the plaintiff to prove that a defective fire box or a defective ash pan on a particular engine caused the starting of the fire in question; but it is undisputed that at about 2 o'clock of the morning of October 14, 1908, there was no fire along the defendant's right of way between Beaver River station and Woods Lake station; that shortly after 9:30 o'clock of the morning of October 14, 1908, there was an active fire on and off of the right of way from milepost 75.10 to milepost 75.25, burning quite fiercely along the right of way in question for quite a distance.

We think the evidence very conclusively shows that on the 14th day of October, 1908, the defendant ran upon its right of way adjoining the lands of the plaintiff, at the location in question, five or more locomotives with grossly defective fire boxes and ash pans; in fact, so defective as to make it reasonably certain that live coals and cinders would be thrown therefrom upon the right of way. It appears that a fire did in fact start upon that day upon the right of way, and there is no other explanation as to how it could have started, except from the act of the defendant in running its locomotives over such point with defective fire boxes and ash pans. We think the evidence clearly permitted the jury to determine that the fire in question was started because of the defective fire boxes and ash pans used by the defendant upon its locomotives.

It also appears, and practically without contradiction, that on the defendant's right of way, between the points in question, were cut

grass and bushes, some gathered in piles, and others lying upon the right of way, where they were cut, none of which had been removed. There were also old logs and sticks, some cut that summer, all piled in the right of way, "evidently to take away or burn," but not removed. This condition of the right of way had existed all that summer, and such rubbish was all burned in the fire which occurred. The starting of the fire, the spreading of it onto the adjoining property, constituting the forest preserve, by reason of the accumulation of inflammable material on defendant's right of way, is all very clearly portrayed in the evidence. So is also the progress of the fire, and it seems to me that such evidence very conclusively shows that the fire was started because of the negligence of the defendant in permitting the fire boxes and ash pans of its locomotives to be out of repair and in such condition as to permit live coals of unusual size to be thrown about the tracks, which would naturally cause a fire under the conditions which existed at the time in question, and that the defendant, in permitting upon its right of way an accumulation of leaves, dead grass, and dead timber, and other inflammable materials, was negligent, is clearly shown by the evidence, which is of such character as to reasonably account for the spread of the fire in question onto and over the premises of the state known as the "forest preserve."

We have no hesitation, upon all the evidence, in concluding that the jury was justified in finding that the fire in question and its spread, which occasioned the damages to the plaintiff's property, was caused by the negligence of the defendant. We think that this proposition would be true, even independent of section 72 of the Forest, Fish, and Game Law (Consol. Laws 1909, c. 19), as the same was in force at the time in question. The obligation of the defendant is, if possible, emphasized by such law. It provides:

"Every railroad company shall, on such part of its road as passes through forest lands or lands subject to fires from any cause, cut and remove from its right of way along such lands, at least twice a year, all grass, brush and other inflammable materials. Where the railroad runs through forest lands in counties containing part of the forest preserve, it shall so cut and remove the same from its right of way whenever required by the commissioner; employ in seasons of drought and before vegetation has revived in the spring, sufficient trackmen to promptly put out fires on its right of way; provide locomotives thereon with netting of steel or iron wire so constructed as to give the best practicable protection against the escape of fire and sparks from the smokestacks thereof and adequate devices to prevent the escape of fire from ash pans and furnaces which shall be used on such locomotives. * * * No railroad company or employé thereof shall deposit fire coals or ashes on its track or right of way near such lands. In case of fire on its own or neighboring lands, the railroad company shall use all practicable means to put it out. * * *"

Section 74 of the said law provides:

"A person * * * who suffers a fire on his own lands * * * shall * * * be liable to the state or any person for the damages caused by such wrongful act. If state lands in the forest preserve are or have been damaged willfully or negligently as aforesaid, an action to recover the damages shall be maintained in the name of the people of the state on the order of the commissioner by counsel designated by him, and recovery shall be had therefor. * * *"

Under the evidence, as we have attempted to briefly detail it, and under the provisions of the statute, we think there can be no doubt that the jury was justified in concluding that the defendant was guilty of negligence which caused the fire in question to start and permitted it to spread upon the lands of the plaintiff, and we think that for whatever damages resulted therefrom the defendant is liable.

[2] The defendant urges that reversible error was committed by the trial court in the admission of evidence to which objection was made and exception duly taken. The first alleged error relates to the admission of the testimony of the witness Tessier, called by the plaintiff, and who was the chief dispatcher of the Malone division of the defendant's railroad. He produced, pursuant to plaintiff's subpœna, the reports or train sheets showing the trains which passed over such division from day to day. After the witness had stated that he was the chief train dispatcher and that he had with him the train sheets which he had been subpœnaed to produce, he was asked the question:

"Will you start from the 1st of October, and tell us of passenger trains that passed by the point between Woods Lake and Beaver River, and the time of the passage of such trains, giving the number of the engine and the number of the train?"

Objection was made to the question, on the ground that it was immaterial as to what trains passed over the road between the 1st of October and prior to the 14th, the date when the fire occurred. Defendant's counsel asserted that because of the bill of particulars, stating that the fire started on the 14th day of October, 1908, any question as to the passage of trains prior to that day was immaterial. Counsel for the plaintiff responded as follows:

"We do not intend to interfere with the bill of particulars. This is proof on the question of negligence. It shows what trains and engines they were using on that road, and using constantly."

The objection was overruled. The court stated, in substance, that the evidence was not received as any evidence as to the amount of damages, but simply as evidence upon the question of negligence. The witness then stated (referring to the train sheets) the trains which had passed over the territory in question between the 1st and 13th days of October, giving the number of the trains and the numbers of the engines drawing the same. He also, without further objection, gave like data as to trains and engines which passed over that part of the road on the 14th day of October.

It is also urged that evidence was improperly admitted showing the conditions of certain of defendant's locomotives operated between the points in question prior to the 14th day of October, the alleged date of the starting of the fire in question.

It seems to me that all this evidence was competent, as bearing upon the question of defendant's negligence. It tended to show the manner in which the defendant had been accustomed to operate its motive power on the branch of its railroad for several days immediately preceding the day upon which the fire in question was started. The evidence of the plaintiff tended to show that a few days prior to the starting of the fire an examination was made of a large number of the

engines of the defendant operated over this branch, and that they were all discovered to be out of repair; that the fire boxes and ash pans thereof were not in such condition as to comply with the law, but were in such condition as to make their operation reasonably certain to cause a fire. It was shown that on many engines the fire boxes and ash pans were in such condition as to permit live coals of unusual size to escape upon the tracks, and it was also shown that after the examination of such engines, and after the attention of the defendant had been especially called to their condition, they were not repaired, and no means were taken by the defendant between the date of such examination and the date of the fire in question to remedy the defects. It also appears that some of such engines, as they proceeded up and down the road, scattered live coals and cinders in such manner as could not have resulted if they had been in a proper condition, and in the condition required by the statute.

It seems to me that this question of the competency of this evidence is fully discussed and decided adversely to the defendant's contention in the case of Jacobs v. New York Central & Hudson River Railroad Co., 107 App. Div. 134, 94 N. Y. Supp. 954. Judge Hiscock, writing for this court, said:

"The evidence that the same engine which is alleged to have set plaintiff's buildings upon fire had started other fires, both upon the occasion in question and another one, under the circumstances disclosed in the case, was competent. Taken in connection with the other established facts, it indicated that the engine was throwing sparks and cinders of a kind which could not have escaped if the mesh had been in proper order. Slossen v. B., C. R. & N. R. Co., 60 Iowa, 215 [14 N. W. 244]; Peck v. N. Y. C. & H. R. R. Co., 165 N. Y. 347, 352 [59 N. E. 206]."

The court further said:

"Complaint is made because the trial justice allowed the plaintiff to testify that, upon other occasions within a period immediately preceding the fire, locomotives not identified as the one passing just before the fire, had thrown cinders as far as his buildings. This evidence was limited to engines drawing passenger trains as they passed plaintiff's property. There was no suggestion upon the part of defendant, which, of course, was possessed of ready information upon this subject, that there was any material difference in the construction, operation, or fuel used by its passenger locomotives. Therefore we are entitled to assume that the conditions under which these locomotives, upon other occasions, in passing over the same spot and drawing the same kind of trains, threw sparks and cinders, were substantially the same as those which governed upon the occasion when one of them is alleged to have thrown the cinders which fired the buildings. * * * We think that it was permissible for plaintiffs to show, as tending in a general way to sustain their claim, that before the fire defendant was operating engines which threw sparks and cinders as far as the buildings in question. This at least tended to establish that an engine might throw an ignited cinder as far as this, and that, therefore, it was entirely reasonable and probable to assume that the buildings had been set on fire by a cinder thrown this distance from the passing locomotive. * * * In Sheldon v. Hudson River R. R. Co., 14 N. Y. 218, 67 Am. Dec. 155, the evidence tended to establish, just as in this case, the identity of the particular engine which had caused the fire. Nevertheless evidence was permitted that upon other occasions other locomotives had emitted sparks. * * * The same general rule has been upheld in Field v. N. Y. C. R., 32 N. Y. 339; Crist v. Erie Railway Co., 58 N. Y. 638; Hinds v. Barton, 25 N. Y. 544. In the latter case the court says: 'It was the object of the plaintiff to show the cause

of the fire; and this, doubtless, had to be established by circumstances. If any one had seen the sparks leave the engine and proceed to and ignite the buildings, this would have been such clear, positive, and direct testimony as would, doubtless, have rendered any resort to circumstantial testimony unnecessary. But if no such positive testimony was given, or, if given, it became necessary to sustain it by other testimony, then it was most pertinent and important to show that on previous occasions the engine had emitted sparks which passed over a greater space than that between it and the buildings consumed on the present occasion and caused the ignition of other buildings or materials. * * * It was well remarked in that case [Sheldon Case, supra]—and what was said is applicable to the present—that the admission of such evidence is essential to the administration of justice, inasmuch as circumstantial proof must, in the nature of things, be resorted to, and inasmuch as the jury cannot take judicial cognizance of the fact that locomotive engines do emit sparks and cinders which may be borne a given distance by the wind."

So that, upon this authority and many others which might be cited, we conclude that the evidence objected to by the defendant was competent for the purpose of showing that the defendant was guilty of negligence. The plaintiff being unable to point out the particular defect in the particular engine which caused the fire, it resorted to the only other means at hand, to wit, to show that the engines operated by the defendant over this branch of its railroad, one or all of which were defective, were in such condition as to cause the fire which resulted in the damages to the plaintiff.

It seems to me that the charge of the court to which exception is taken in no sense presents reversible error and need not be considered.

The only remaining question to be considered upon this appeal is whether or not the verdict of the jury, upon which the judgment in this case is based, is excessive. The evidence very clearly indicates that a certain number of acres of the forest preserve were injured or destroyed by the fire, which, as we have seen, the defendant by reason of its negligence caused to start and spread. The value of such forest preserve was shown by the witnesses to be about $15 per acre before the fire and approximately $3 per acre after the fire. There is considerable controversy as to the rule of damages in this case. The defendant claims that it is entitled to be credited with the value of the timber which it had killed upon the forest preserve. Whether or not the defendant is entitled to have offset in its favor the value of the timber after the fire, and which was killed by it, involves the interpretation of the provisions of article 7 of section 7 of the state Constitution, which provides as follows:

"Sec. 7. Forest Preserve. The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed."

[3] Practically, the contention of the defendant in this regard is that the timber, assuming that it was guilty of negligence in killing the same, should have been marketed or sold by the state, thus reducing the damages resulting from the defendant's negligence. My notion is that under the provisions of the Constitution, to which attention has been called, the state was not permitted to market the timber, made

dead by the negligence of the defendant, and that there was no way in which it could have properly minimized the damages which through the negligence of the defendant had been sustained by it. I am quite inclined to believe that the Legislature might have provided a means by which dead timber, whether resulting from the negligence of a wrongdoer or otherwise, could be removed from the forest preserve and utilized; but such apparently was not the intention of the people of the state when the provision of the Constitution was adopted. It prohibits in express terms the sale or removal of any timber from such lands, and it is hard to conceive how a wrongdoer can insist, in a case like the one at bar, that the state shall remove any dead timber in reduction of damages caused by such wrongdoer affecting state lands. Legislation in that regard might be employed. Indeed, it would seem that if from the negligent act of another, or by mere accident, certain trees in the forest preserve were killed, and it was for the interests of all parties that such killed trees should be utilized, or removed or made available for any purpose, it would be wise legislation to permit the removal of such trees; but the provision of the Constitution as it now stands, as it seems to me, is positive to the effect that no timber, either dead or alive, shall be sold or removed from the forest preserve, and so I cannot conceive how, in a case like the one at bar, the defendant is in a position to claim that the value of the trees in the forest preserve, which by its negligence it has killed, should be credited to it in reduction of damages, although such trees under the provisions of the Constitution cannot be sold.

We think in this regard that the defendant's contention is untenable. The trial judge was right in permitting the jury to find the value of the forest land before the fire, and the value thereof after the fire, eliminating from the verdict the value of the timber that was destroyed by the defendant. Upon all the facts and circumstances, I conclude that the verdict is right, and that the judgment and orders appealed from should be affirmed, with costs.

Judgment and orders affirmed, with costs. All concur, except ROBSON and FOOTE, JJ., who dissent and vote for modification of the judgment, by reducing the recovery to the lower amount found by the jury, viz., $2,908, and affirmance, without costs, as so modified.