PYE v. PYE.

(Supreme Court, Appellate Division, Fourth Department.   March 26, 1915.)

1. DIVORCE ⊜⟶236—DECREE FOR ALIMONY—AGREEMENT IN SETTLEMENT—BIND-
   ING EFFECT.
      The written agreement, by which a wife agrees to accept a certain sum
   in full payment of alimony decreed to her, which sum has been paid, is
   binding until set aside.
      [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 666, 667; Dec.
   Dig. ⊜⟶236.]

2. DIVORCE ⊜⟶236—DECREE FOR ALIMONY—AGREEMENT IN SETTLEMENT—PRO-
   CEEDINGS TO SET ASIDE.
      A written agreement, binding a wife to accept a certain sum in pay-
   ment of alimony decreed to her, which sum has been paid, cannot be set
   aside on motion; her remedy, if any, being by action.
      [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 666, 667; Dec.
   Dig. ⊜⟶236.]

Appeal from Special Term, Monroe County.

Action by Margaret A. Pye against Frank Pye.   From an order
denying plaintiff's motion for an order annulling settlement agreement
as to alimony and for leave to issue execution to collect alimony, plain-
tiff appeals.   Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAM-
BERT, and MERRELL, JJ.

M. Fillmore Brown, of Angola, for appellant.
George D. Forsyth, of Rochester, for respondent.

PER CURIAM.   [1] The written agreement by which plaintiff
agreed to accept $925 in full payment of the alimony awarded to her by
the decree herein, which sum was paid to her, is still in force, and is
binding upon plaintiff until set aside.   Galusha v. Galusha, 116 N. Y.
635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453; Winter v.
Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710; Green-
field v. Greenfield, 161 App. Div. 573, 146 N. Y. Supp. 865.

[2] It cannot be set aside on motion.   If plaintiff has a right to have
it annulled, her remedy is by action.

The order appealed from should be affirmed, without costs.

---

SNOOK et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Monroe County.   April 6, 1915.)

1. RAILROADS ⊜⟶465—FIRES—LIABILITY.
      Where the negligence of a railroad company was the direct and proxi-
   mate cause of a fire starting in one building and extending to other build-
   ings, the company was liable for all the damages resulting.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1690–1693;
   Dec. Dig. ⊜⟶465.]

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. WATERS AND WATER COURSES ⊙⟿119—DIVERSION OF WATER—LIABILITY OF RAILROAD COMPANY.**

A railroad company, constructing a ditch along its right of way and thereby collecting surface water, must exercise ordinary care to see that the ditch and a culvert constructed to carry the surface water are in proper condition, so that waters collected will not be set back on lands of adjoining owners to their damage.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 131–134; Dec. Dig. ⊙⟿119.]

**3. WATERS AND WATER COURSES ⊙⟿119—DITCHES AND CULVERTS—LIABILITY OF RAILROAD COMPANY.**

An owner of lands adjacent to a right of way maintained thereon buildings for his business. In one of the buildings, lime delivered by the railroad company was stored. The company built a ditch along its right of way, and a culvert sufficient to carry away waters ordinarily collected in the ditch. An exceptionally heavy rainfall caused water collected in the ditch to be set back on the land of the owner, and to reach the lime, causing a fire destroying the owner's buildings. There had not been any prior difficulty with the culvert. *Held*, that the company was not guilty of actionable negligence in maintaining the ditch and culvert, and was not liable for the fire.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 131–134; Dec. Dig. ⊙⟿119.]

Action by Blaine G. Snook and others against the New York Central & Hudson River Railroad Company. On motion by defendant for new trial on the minutes. Granted.

Miller & Bentley, of Pulaski, for plaintiffs.

Harris, Beach, Harris & Matson, of Rochester (David C. Munson, of Rochester, of counsel), for defendant.

CLARK, J. The Rome, Watertown & Ogdensburg division of defendant's railroad runs in an easterly and westerly direction through the northern part of Monroe county, and at a station called Walker plaintiff Snook owns a small tract of land adjoining defendant's right of way on the south. On this tract of land Mr. Snook had, prior to March, 1913, several buildings which he used in the produce business conducted by him at that station. One of the buildings was called the lime shed, and in it he had stored some 50-odd barrels of lime, which had been shipped to him over defendant's railroad, and which had been delivered to one of his buildings by defendant over a switch which was used by Mr. Snook in the conduct of his business as a shipper of produce from said station.

The general slope and drainage of the land in that vicinity is toward the north, toward Lake Ontario, and prior to the construction of defendant's railroad all drainage waters from lands in the vicinity under consideration naturally drained northerly. When the railroad was constructed many years ago, it interfered with this natural flow of drainage waters to the north, and evidently for the purpose of collecting surface waters, which would reach or be accumulated on its right of way, defendant constructed a ditch on its land commencing about 100 rods east of lands of plaintiff Snook, and continued it westerly on its right of way, and parallel with and south of its tracks, to a point

several feet east of the south end of a culvert which defendant had maintained for years, which served the purpose of conveying waters collected in this ditch under defendant's tracks to the north side thereof. At a point a few feet east of the south end of this culvert this railroad ditch curved southerly to a point near the south line of defendant's right of way, and then continued its course westerly to a point directly south of the south end of the culvert, when the ditch turned to the north and ran 10 or 15 feet to the south end of the culvert, so the waters collected in the ditch passed through the culvert under the tracks to the north side, as above stated.

The land of Mr. La Barron joined Snook's land on the east, and also defendant's right of way on the south. There is a depression in La Barron's land near the east end of Snook's property, and very near one or more of the buildings that were located thereon. It is the contention of defendant that the surface waters in that vicinity collected in this natural depression and reached the railroad land at a point directly opposite the south end of the culvert, and that consequently any surface waters which naturally drained into this depression would be conveyed directly across defendant's right of way into the southerly end of the culvert, and were therefore not collected in its ditch. The contention of plaintiffs is that this depression on La Barron's land strikes defendant's ditch at a point 15 or more feet easterly of the south end of the culvert, and therefore surface waters which naturally drained from La Barron's lands were collected in defendant's ditch several feet east of the culvert, and were conveyed to it through the ditch.

In March, 1913, there was an unusual rainfall in this vicinity, and in the forenoon of March 25th plaintiff Snook observed that the culvert was not carrying off the accumulating waters, and that they were being dammed up on the south side of defendant's right of way and set back onto his property and La Barron's property, which adjoined defendant's right of way. He at once notified defendant's station agent at Walker, the only person in charge of defendant's business at that point, and he agreed to notify the defendant's local section foreman and have the obstruction at the culvert removed. Nothing was done in that regard until late in the afternoon, and the waters were continually rising, and at that time reached a point near, if not quite to, some of Snook's buildings. He again notified the station agent of the situation, but the section foreman was not in the vicinity, and nothing was done with reference to relieving the conditions at the culvert, and on the morning of March 26th, owing to the clogged condition of the culvert, the accumulating waters were dammed up and set back on Mr. Snook's property, and reached his buildings, among them being the lime shed, in which he had stored the lime above mentioned. This shed was on abutments some 18 inches above the ground.

The waters continued to rise until they reached the floor of the building, and finally reached a height of 6 inches around the standing barrels of lime. When the water reached the lime, by chemical processes explained by witnesses on the trial, heat was produced, which resulted in setting the lime building on fire, and practically all the buildings owned by Mr. Snook on this small tract of land adjoining defendant's

property, with their contents, were destroyed. The value of the property was conceded, so the jury was not troubled with the question. of damages, but the questions of defendant's negligence, the contributory negligence of plaintiff Snook, and the question of whether or not defendant's negligence, if any, was the proximate cause of this conflagration, were submitted to the jury, and on all the propositions the jury found for the plaintiffs, and they recovered a verdict for the damages, the value of the property as stipulated; the plaintiffs being the owner of the property destroyed and several insurance companies who had paid losses under their policies held by Snook at the time of the fire, and they being subrogated to the amounts paid.

Defendant moved for a new trial on the minutes, alleging that its negligence was not established, and that, even if it was, its negligence was not the proximate cause of the fire. Moreover, defendant urged that, even though it was negligent, and its negligence was the proximate cause of setting fire to the lime shed, the damages should be limited to those resulting from the destruction of that building, and could not, under any circumstances, be extended to the damages resulting from the destruction of the other buildings and contents.

As to the question of the contributory negligence of the plaintiff Snook, it was clearly a question of fact for the jury, and the finding on that question is supported by sufficient evidence.

[1] As to the proposition urged by the learned counsel for defendant, that even though it was negligent, and its negligence was the proximate cause of the fire, the damages should be limited to those occasioned by the destruction of the first building, I do not think such a conclusion would be justifiable under the evidence in this case. The buildings of plaintiff Snook were on one parcel of land adjoining the railroad right of way, and if the evidence was sufficient to justify the finding that defendant was negligent in not keeping its ditch and culvert in proper condition, and that such negligence was the natural, direct, and proximate cause of the fire which resulted in the destruction of Mr. Snook's property, then defendant would be liable for all the damages which were the direct, natural, and proximate result of its negligence, and they would not be limited to damages resulting from the destruction of the first building. Jamieson v. N. Y. & R. B. R. Co., 11 App. Div. 50, 42 N. Y. Supp. 915; Jacobs v. N. Y. C. & H. R. R. Co., 107 App. Div. 134, 94 N. Y. Supp. 954; Id., 186 N. Y. 586, 79 N. E. 1108; Branson v. N. Y. C. & H. R. R. Co., 111 App. Div. 737, 97 N. Y. Supp. 788; Hinds v. Barton, 25 N. Y. 544; Collins v. N. Y. C. & H. R. R. Co., 132 N. Y. 603, 30 N. E. 1152; People v. N. Y. C. & H. R. R. Co., 155 App. Div. 699, 140 N. Y. Supp. 902; 13 Am. & Eng. Enc. of Law (2d Ed.) page 452.

[2, 3] There was evidence which would justify the finding that the culvert in question was structurally defective, but it was not shown that it had not been sufficient for all ordinary purposes; that is, it was shown that it had always been a sufficient culvert to convey to the north side of defendant's tracks all the waters which had been collected in its ditch under ordinary conditions. In fact, as I recall the evidence, it nowhere appeared that the culvert had ever failed to convey to the

north side of the track all waters which had been collected in defendant's ditch, whether these waters came from defendant's right of way or from lands of adjoining owners, and there was no proof that defendant had previous knowledge or notice of any defect in the culvert.

At the time Mr. Snook's buildings were destroyed, conditions were unusual and exceptional. A heavy rainfall had occurred, the heaviest storm of its kind that had been known in this vicinity in upwards of 40 years, the rain was heavy and continuous for many hours, and this culvert, which had been sufficient under ordinary conditions to convey to the north side of defendant's tracks all waters which had been collected in its ditch, proved inadequate to take care of the tremendous volume of water which resulted from this unusual rainfall. Primarily defendant owed no duty to the plaintiff Snook, or any other adjoining owner, with reference to the surface waters from their lands. Sabetto v. N. Y. C. & H. R. R. Co., 127 App. Div. 832, 112 N. Y. Supp. 118. It having constructed a ditch along its right of way, if it actively collected these surface waters, it was obliged to exercise ordinary care to see to it that this ditch and culvert were kept in proper condition, so that waters it had collected would not be dammed up and set back on lands of adjoining owners to their damage. It was not obliged to exercise active vigilance in this regard, and it was not the insurer of the safety of the property of adjoining owners. Its duty was simply that of ordinary care and to guard against accidents which might reasonably be expected or anticipated.

Now, was this fire, which undoubtedly resulted from water coming in contact with lime stored in Mr. Snook's lime shed, an injury of such a nature that a reasonably prudent man would expect or anticipate it? I think not. If there had ever been any prior difficulty with this culvert, which had been brought to the knowledge of defendant, or its employés, it would present a very different situation; but here, where the culvert in question had always been sufficient to convey the waters collected in defendant's ditch to the north side of its tracks under ordinary conditions, to hold that the injury resulted from this choking up of the culvert when the rainfall was exceptional and unusual was something that might have been expected or anticipated would be holding the defendant responsible as an insurer of the property of adjoining owners, and I do not understand that that is the rule or the law. In Lowery v. Western Union Telegraph Co., 60 N. Y. 198, 19 Am. Rep. 154, the court said:

"The law does not undertake to hold a person who is chargeable with a breach of duty toward another with all the possible consequences of his wrongful act. It, in general, takes cognizance only of those consequences which are the natural and probable result of the wrong complained of."

And again, in Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715, the court said:

"The damage must be the proximate result of the negligent act. It must be such as the ordinary mind would reasonably expect as a probable result of the act; otherwise, no liability exists."

In view of the fact that the culvert in question, the negligent maintenance of which, on the part of defendant, plaintiffs allege was the

cause of the fire in question, had always been sufficient to take care of the surface waters collected by defendant in its ditch, and that there had never previously been any difficulty, but that the waters which were set back on plaintiffs' lands at the time of this fire resulted from a sudden, unexpected, and very unusual rainfall, I do not think it can be said under all the evidence in this case that a reasonably prudent man would have expected or anticipated the fire and damages in question; that is, the injury suffered by plaintiff Snook could not have been anticipated or expected by reasonably prudent men, and the finding of the jury that defendant was negligent under the circumstances, and that its negligence was the proximate cause of this fire, without which it would not have occurred, was contrary to and against the weight of the evidence. It was in the highest degree speculative for the jury to say, in view of the tremendous volume of water which fell at that time as the result of that storm, that waters actively collected by defendant in its ditch were the direct and proximate cause of this fire.

It impresses me that if defendant was negligent, and its negligence was the proximate cause of plaintiff's misfortune, defendant would be responsible for all the damages which resulted directly from its negligence; but, under all the evidence in this case, the finding that defendant was negligent and that the damages complained of were the direct and proximate result of such negligence, without which they would not have occurred, was not justified by the evidence. To hold defendant responsible for the result of this unusual, unexpected, and unprecedented rainfall would be to make it the insurer of the safety of property of adjoining landowners. That obligation defendant did not assume, and could not, under the law, be made to assume.

The motion for a new trial must be granted, with costs to abide the event.